JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7833 | **DATE** | 8/30/2002 |
| **CASE TITLE** | John Cichon vs. Jo Anne B. Barnhart, Commissioner of Social Security | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order: Both Parties' Motions for Summary Judgment are denied, and the ruling of the ALJ is vacated. This matter is remanded to the ALJ for further proceedings consistent with this opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 03 2002 date docketed | |
| | Notified counsel by telephone. | | | 03 |
| | Docketing to mail notices. | | CDY docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN CICHON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 00-C-7833 |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART,[1] | ) | Magistrate Judge Nan R. Nolan |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This is an action brought under 42 U.S.C. § 405(g) to review the final decision of the

Commissioner of Social Security denying plaintiff John Cichon's ("Cichon") claim for both

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social

Security Act. The parties have consented to the jurisdiction of the United States Magistrate Judge

pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court denies both parties'

motions for summary judgment, vacates the ruling of the ALJ, and finds that this matter should be

remanded for further proceedings.

## I.    PROCEDURAL HISTORY

On January 19, 1999 Cichon applied for Title II disability insurance benefits, alleging that

he had been incapable of work due to a herniated disc since April 3, 1998. (R. 19, 39.) On February

26, 1999, the Social Security Administration ("SSA") denied his application, explaining he failed

to qualify for benefits because he was capable of returning to past work despite the pain and

---

[1]Jo Anne B. Barnhart is substituted for her predecessor pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure.

discomfort caused by his medical condition. (R. 21.) Cichon then filed a request for reconsideration on March 23, 1999, which the SSA denied on April 21, 1999 on the grounds that no new evidence proved his condition worsened or illustrated his inability to perform past work or to handle light work activity. (R. 25-26.) Finally, Cichon filed a request for a hearing by an administrative law judge ("ALJ") on June 21, 1999 and successfully attained one on September 2, 1999 as a *pro se* claimant. (R. 11, 29.) The ALJ ruled that under the Social Security Act, Cichon had not been disabled at any time through the date of the hearing because he was capable of at least light work even though he could not return to past work. (R. 16.) As a result, Cichon filed a request for a review of the ALJ's decision on October 29, 1999, but the SSA Appeals Council denied his request on November 3, 2000. Thus, the ALJ's decision became the final decision of the Commissioner and is now reviewable by the District Court under 42 U.S.C. § 405(g).

## II.     **FACTUAL BACKGROUND**

### A.     *Medical Evidence*

Prior to the onset of Cichon's alleged disability, he had already suffered episodes of severe back pain due to another injury. (R. 98.) As early as September 1997, Cichon was admitted to the emergency room at Central DuPage Hospital for lower back pain, and the next month he began treatment with Dr. Davison, who estimated Cichon suffered from an acute disc herniation at L4-L5, acute lower back pain, and numbness running from his legs to his feet. (R. 91, 98-99.) Dr. Davison prescribed Vicodin and Flexeril three times a day for his pain.

The fall that Cichon claimed caused the disability for which he sought disability benefits occurred while he was at work on February 2, 1998. (R. 92.) Subsequently, on March 10, 1998, Cichon was admitted to Bolingbrook Medical Center's emergency room for sharp pain in his right

-2-

buttock, numbness in his right leg, and severe back pain. (R. 144.) Although x-rays showed nothing but normal conditions, another examination showed mild tenderness in his lumbar spine with spasms and right straight leg raising ("SLR") positive at fifty degrees. (*Id.*) Cichon was diagnosed with possible acute lumbar strain. (*Id.*) On March 13, 1998, he was again examined by Dr. Davison, who found that his patient had no Achilles reflex, decreased toe strength on the right side, and substantial palpable spasms and that the SLR exam caused Cichon pain. (R. 92.) Dr. Davison prescribed him various medications to relieve pain, such as Vicodin, Flexeril, Prednisone and Duract.. (*Id.*) Later in March 1998, under Dr. Davison's care, Cichon underwent an MRI exam that revealed a bulge at L4-L5 and right side herniation at L5-S1. (R. 97.)

By April 3, 1998, which was the onset date of Cichon's alleged disability, he visited Dr. Zuhosky, a surgeon at Glen Oaks Hospital, for an epidural steroid injection. (R. 121, 126.) A few days later, he received another injection from Dr. Lagattuta at Glen Oaks Hospital upon recommendation from Dr. Davison, who also ordered Cichon not to work for two weeks and continued to prescribe him Vicodin and Ambien, a sleep-inducing drug. (R. 120-21, 126.) On April 14 1998, Cichon was admitted to Bolingbrook Medical Center emergency room for right buttock pain and right leg pain verified by an examination which showed tenderness in the right buttock but also showed good reflexes. (R. 147.) There, on April 22, 1998, Dr. Lemak diagnosed him with right leg pain after an exam showed tender swelling in the right thigh, decreased Achilles reflex and a limited range of motion in his right hip. (R. 150.) Two days later, Cichon received an electromyography ("EMG") at Glen Oaks Hospital where he was also diagnosed with a right L5 radiculopathy and peripheral neuropathy. (R. 123.)

Including his first visit for an epidural injection, Cichon visited Dr. Lagattuta four times during April and May of 1998. During a second visit in April, Dr. Lagattuta reported that Cichon's SLR was positive at thirty degrees, lumbar extension caused pain down his leg, sensation was decreased at L5, reflexes were absent at the ankles and motor testing showed weakness of foot and toe extension. After an exam on April 27, 1998, Dr. Lagattuta reported Cichon could lift ten pounds frequently and twenty pounds occasionally, had no ability for moderate or heavy lifting or extensive bending and stooping, could walk frequently and could occasionally climb stairs, twist, push, and pull. (R. 117.) Dr. Lagattuta's final exam of Cichon in May 1998 involved an EMG that showed membrane irritability at his L5 muscles, his right leg and lumbar paraspinals, and a severe right L5 radiculopathy as well as a mild diffuse peripheral neuropathy. (R. 131-32.) Dr. Davison also administered his final exam of Cichon in early May 1998 and reported Cichon suffered from increasing lower back pain that radiated into his right leg where he also felt weakness. An exam showed a progressive decrease of his Achilles reflex, great toe strength and that SLR right and left caused Cichon pain. (R. 95.)

Dr. Michael Caron, Cichon's treating neurosurgeon at the time of the hearing, began seeing Cichon on May 7, 1998 and continued to treat him through the date of the hearing in fall 1999. (R. 109, 160.) From the start, in May 1998, he diagnosed Cichon with a large herniation at L5-S1 with significant weakness, a moderate L4-L5 bulge with weakness and L5 nerve root distribution. (R. 109.) Dr. Caron reported Cichon's need for a right L5-S1 microdiskectomy, foraminotomy, monitoring of his L4-L5 level and continued pain medications. (R. 109, 111.) He also reported the exam showed moderate paraspinal muscle spasms, positive right sciatic notch tenderness, positive right SLR pain, left SLR that caused pain to right side, and positive pain on right hip rotation. (R.

111.) Cichon later reported to Dr. Caron that he suffered throbbing hip and leg spasms from knee to ankle and severe stabbing pain at the center of his foot. (R. 108.) By June 24, 1998, Dr. Caron reported concern over Cichon's obvious herniated lumbar disc. (R. 107.) He examined him again in August 1998 and found positive paraspinal muscle spasm, and positive SLR pain on both sides. (R. 103.) On October 12, 1998, Cichon reported to Dr. Caron of worsening pain running down his right leg, a throbbing in the side of his foot at the S1 distribution, severe pain when lying down, and difficulty sleeping. (R. 101.) Dr. Caron's subsequent exam during his visit showed a weakened ankle and great toe, and gastric extension at L4-L5. (*Id.*) Dr. Caron reported his concern of Cichon's permanent nerve damage and possible drug dependency without surgery. (*Id.*)

Cichon was examined by Dr. Yonan of the Disability Determination Service ("DDS") of the SSA on February 9, 1999 in a report marked Exhibit 7F. (R. 151-53.) Dr. Yonan diagnosed Cichon with a herniated L5-S1 disc and stated that ankle extensions at L4-L5 caused limitations. (R. 152.) He reported Cichon's exertional limitations to be twenty pounds lifting occasionally and ten pounds frequently, and his ability for standing or walking to be six hours out of an eight hour work day with normal breaks. (R. 152.) He also reported that Cichon could balance, crouch, crawl, and kneel frequently, could stoop occasionally, but could either never or only occasionally climb. (R. 153.) Cichon also responded to a DDS-administered pain questionnaire in which he claimed that since the accident, he had constant pain in his right buttocks that spread to his foot. (R. 88.) He then claimed that he relied on one Vicodin tablet every six hours, two Flexeril tablets a day, and wore a back belt, but that even such attempts failed to relieve his pain. (*Id.*) Cichon explained that the pain first began to affect his activities on February 2, 1998 and became disabling on April 3, 1998 due to his inability to stand or sit for long periods. (R. 89.) He claimed his daily activities included walking, shopping,

chores, driving, and socializing, but that all activities were curtailed by his pain and his problems with weakness and numbness in his legs. (*Id.*)

Cichon's last medical diagnosis before the hearing was from Dr. Caron. (R. 160.) Dr. Caron stated in a letter dated October 1, 1999 that Cichon should be considered "almost totally disabled for heavy labor" and that his work capacity was standing for two hours performing light duty lifting with "rare medium weight" of forty to sixty pounds for ten to twenty seconds at a time. (*Id.*) He also reported that Cichon had the capacity for minimal bending and squatting but could not lift overhead during his two-hour work tolerance. (*Id.*) He stated that Cichon required a one to three hour reclining period before resuming another two hours of work. (*Id.*) Dr. Caron also expressed that Cichon had a good chance of returning to medium-weight level employment on a full time basis with surgical intervention. (*Id.*) He explained that if more evidence was required for further documentation, that he would be able to provide it upon request. (*Id.*)

### B.   *Testimony*

Cichon, who was thirty-eight years old at the time of the hearing, was born on August 9, 1961. (R. 168.) Cichon's highest level of education was the tenth grade, and he had no vocational training or literacy problems. (R. 169.) He was 6'1" and 180 pounds. (R. 176.) Since February 1999, Cichon had lived at a hotel managed by his girlfriend. (R. 177.)

Cichon last worked in April 1998, the time he claimed his disability began, ending a nine-month employment period as a batchweigher and mill hand, a job which required lifting between forty and eighty pounds on a regular basis. (R. 169-70.) For the last fifteen years, Cichon had only worked warehouse-related jobs such as forklift driving, dock work, shipping, and janitorial. (R. 173.) Cichon claimed he eventually quit work in April 1998 because he could no longer stand or lift

and had frequent numbness and sharp pain in his legs. (R. 170.) Moreover, his employers found his physical limitations prohibitive to his job performance. (*Id.*) Cichon testified he had not had any employment for nearly an entire year after the alleged onset date of his disability in April 1998 until the spring in 1999 when he returned to engaging sporadically in landscaping work, a job he had done over the last six years independently. (R. 170-72.) Most recently, he explained, he had engaged in landscaping eight weeks prior to the hearing. (R. 171.) Such work involved riding a mower, hand mowing, trimming bushes, and maintaining the employer's residence by cleaning windows and occasionally the home's interior. (*Id.*) Cichon added that his employer, with whom he had a prior employment relationship, was aware of his physical condition and warned Cichon not to overexert himself. (R. 172.)

Cichon testified that he had chronic back pain, numbness in his legs, and leg weakness when he would stand or sit for long periods of time or when he would bend. (R. 173.) He claimed that he could only walk three to four blocks before needing rest. Cichon testified to a standing tolerance of five to ten minutes, a sitting tolerance of ten to fifteen minutes, and a lifting tolerance of fifteen to twenty pounds and stated he could not climb or stoop but could tolerate minimal bending. (R. 173-74.) He also testified he had difficulty sleeping due to his severe back pain. (R. 174.) Cichon stated he took pain medications such as extra-strength Vicodin every six hours with no side effects. (R. 176.) However, he claimed that none of the pain relieving remedies was effective, including non-medicinal treatments such as rest, bathtub soaking, or rubdowns. (R. 176-77.) Cichon claimed his doctors informed him he needed surgery before rehabilitation could begin, but the expense of the surgery made this a prohibitive option. (R. 174.) In terms of handling the basic needs of self-care, Cichon had no difficulty with showering, but some difficulty bathing because of buttocks pain from

-7-

sitting. (R. 177.) Cichon stated he was capable of helping with minor chores around his hotel such as sweeping sidewalks, emptying garbage and dusting rooms, but could only perform such duties in five minute intervals before needing work breaks. (R. 180.) He also stated he was able to drive short distances, but that he had difficulty sitting for a substantial period of time without his legs becoming numb. (R. 178.)

### C.    *Vocational Expert Testimony*

The vocational expert ("VE") first classified Cichon's work as a batchweigher and mill hand to be unskilled, heavy work. (R. 185.) He then stated that if the landscaping work was considered relevant, he would classify such activity as unskilled, medium work assuming that it was performed six to seven hours per day. (*Id.*) Lastly, the VE summarized all of Cichon's fifteen-year work history in warehouse-related jobs as ranging from light to medium range, unskilled to semi-skilled work. (R. 185.)

Next, the ALJ posed two hypotheticals to the VE. (R. 186-87.) The first involved a person with the same work history, age, and education as Cichon who had a residual functional capacity ("RFC") as depicted in the state agency's examination of Cichon, which allowed no more than light work and occasional stooping, but would not allow climbing ladders, ropes, or scaffolds. (R. 186.) The VE responded that such a person could not return to past work and that there were no transferable skills to other work, but that there would be some unskilled work available to the person such as cashier work, assembly work, gate tending, lobby attendant, or visual inspection. (R. 186-87.) Thus, there would be no disability in the first hypothetical. (R. 187.) The second hypothetical was based on the assumption that all of Cichon's testimony was credible. (*Id.*) The VE responded that a person in the situation Cichon described would not be able to work, and would thus be

disabled, due to constant back pain, a continual need for pain medication, leg numbness and weakness, a sitting tolerance of only ten to fifteen minutes, a standing tolerance of only five to ten minutes, and an inability to bend or climb. (*Id.*)

### D. *ALJ Decision*

The ALJ held that although Cichon could not return to past work, he could adjust to other work in the economy and therefore was not disabled under the Social Security Act. (R. 11.) First, Cichon was classified by the ALJ as a "younger individual" with unskilled work experience and a limited education on the alleged onset date of the disability. (R. 16.) He then ruled that evidence supported Cichon's herniated disc and residual symptomology which caused significant vocational limitations implying a "severe" impairment at Step 2 of the five-step disability analysis. (R. 12.) The ALJ did not believe Cichon qualified for any of the listed impairments in the criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1 nor comparable severity to such ailments, and thus did not find a *per se* impairment at Step 3 of the analysis. (*Id.*) On the issue of whether Cichon could return to past work at Step 4, the ALJ ruled that based on Cichon's RFC, vocational factors and the VE's testimony, Cichon could not return to it since such heavy and medium level work conflicted with his reported limitations. (R. 14-16.)

The ALJ stated that he considered both subjective allegations and objective evidence in determining Cichon's disability status at Step 5 pursuant to 20 C.F.R. §§ 404.1529 and 416.929 . (R. 12.) He considered both the testimony of Cichon and Cichon's co-worker who testified that all of Cichon's statements were true, especially about his inability to walk more than three blocks. (R. 13.) He also considered the VE's testimony about the two hypotheticals posed to him. (*Id.*) The first was based on Cichon's physical conditions reported on the DDS report by Dr. Yonan known

as Exhibit 7-F, which the VE claimed would indicate Cichon was not disabled. (*Id.*) The second was based on an assumption that all of Cichon's testimony of his own limitations was credible, which the VE claimed would indicate Cichon in fact was disabled. (*Id.*)

The ALJ then argued that Cichon's testimony, including that regarding pain and RFC, was not credible due to (1) the inconsistency between Cichon's reported limitations and those reported by his treating physician Dr. Caron and (2) his engaging occasionally in at least medium level work as a landscaper. (R. 13.) He argued that Dr. Caron's medical report, Exhibit 8F, indicated that the claimant should be considered "almost totally disabled from heavy labor," (emphasis added) that Cichon was able to stand for two hours performing light work lifting medium weight of forty to fifty pounds, that he was capable of minimal bending and stooping, and that with surgical intervention Cichon could return to full time medium level work. (R. 14.) Thus, the ALJ concluded that Cichon's RFC did not preclude him from handling light work. (*Id.*) In addition, he felt that Cichon's engaging in landscaping part-time further indicated an ability for light level work because the ALJ accepted the VE's determination that such work was at least medium level in its exertional demands. (R.14, 16.) He also argued that Cichon's RFC did not preclude him from light work demands since light work capacity only required standing, lifting at maximum twenty pounds, frequent lifting of ten pounds, and possible use of hand controls. (R. 14.) Lastly, the ALJ reasoned that Cichon's reported minimal ability to bend and squat and his inability to do overhead lifting also did not preclude light work capacity. (R. 14.) He did, however, believe that Cichon's capacity for a full range of at least light work was diminished by his inability to do work demanding overhead reaching, climbing in hazardous places, bending repeatedly or exposed him to environmental irritants. (R. 16.) Overall, he found that Cichon could not be considered disabled under SSA

guidelines because he could adjust to other work existing in significant numbers in the economy including that of cashier, assembler, gate or lobby attendant, and visual inspector. (*Id.*) The ALJ also ruled Cichon had not been disabled at any point through the date of the hearing. (R.14-15.) In sum, he held that Cichon was not entitled to DIB under 20 C.F.R. §§ 216 (i) and 213 of the SSA nor was he eligible for SSI under 20 C.F.R. §§ 1602 and 1614(a)(3)(A). (R. 17.)

## III.     DISCUSSION

### A.     *The ALJ's Legal Standard*

Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ follows a five-step analysis outlined by 20 C.F.R. § 416.920(a)-(f) and considers the following questions in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment severe? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? (5) Is the claimant unable to perform any other work? An affirmative answer at either step 3 or step 5 qualifies the claimant as disabled. *Young v. Secretary of Health and Human Services*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1-4. *Id.* Once the claimant shows an inability to perform past work, the burden shifts to the Commissioner to prove the claimant's ability to perform other work existing in significant numbers in the national economy. *Id.*

**B.**    *Judicial Review*

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998).

**C.**    *Analysis*

**1.  Credibility of Cichon's Testimony**

Although the ALJ found Cichon unable to return to past work at Step 4, he did find Cichon able to perform at least light work at Step 5, which precluded the plaintiff from being found disabled. (R. 14.) The ALJ ruled that because he believed that Cichon's statements regarding his impairment were not credible and that Cichon had engaged in substantial gainful activity ("SGA") since the onset of his alleged injuries, Cichon had not been under a disability as defined by the Social Security Act at any time through the date of the decision. (R. 16.) Cichon argues on appeal that the ALJ's findings were unsupported by substantial evidence and thus, the ALJ's judgment should be reversed or, in the alternative, remanded to the SSA for a new decision.

Cichon first challenges the ALJ's ruling that his testimony lacked credibility. Typically, the ALJ's credibility determination is granted substantial deference by a reviewing court. *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000). In particular, when a credibility determination is based on subjective evidence, such as observations of the claimant in the courtroom, the ALJ's opinion will

be affirmed on appeal unless the claimant can demonstrate that he or she was "patently wrong." *Herr v. Sullivan*, 912 F.2d 178, 182 (7th Cir. 1990). In contrast, an ALJ's assessment, however, will be more closely scrutinized when objective evidence has influenced the ALJ's determination. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985); *see Thomas v. Sullivan*, 801 F. Supp. 65, 70 (N.D. Ill. 1992) (when "objective inconsistency" is at issue "the ALJ has no special advantage over a reviewing court in determining credibility"). Because the ALJ determined Cichon's credibility by analyzing objective evidence within the medical reports and the claimant's testimony, this Court may review the ALJ's judgment for its reasonableness and disregard the more stringent condition that the judgment must be patently wrong in order for it to be disturbed on appeal.

The ALJ must follow a 2-step process when evaluating pain: (1) the ALJ must determine whether the pain alleged is supported by objective medical evidence that could reasonably produce such pain, and (2) the ALJ must evaluate the credibility of the claimant's subjective statements as to the intensity, persistence, and functionally limiting effects. SSR 96-7P, 1996 WL 374286, *2, (S.S.A. July 2, 1996) (interpreting 20 CFR §§ 404.1520 and 416.929.) The Seventh Circuit has ruled that a claimant must provide credible testimony *and* objective medical evidence to qualify for disability insurance benefits for allegations of pain. *Moothart v. Bowen*, 934 F.2d 114, 117 (7th Cir. 1991); *see Brider v. Apfel*, 18 F. Supp. 2d 900, 906 (N.D. Ill. 1998). An adjudicator may find all or only some of the claimant's allegations credible or he or she may find the individual's statements about functional limitations only credible up to a certain degree. SSR 96-7P, 1996 WL 374286, at *4. Moreover, "a finding that an individual's statements are not credible or not wholly credible" is not in itself sufficient to establish an individual is not disabled. *Id.* at *5. All of the evidence in the case record must be considered in order to determine disability status. *Id.*

Applying the factors in SSR 96-7P's guidelines to determine claimant credibility, the ALJ found that Cichon's testimony, including his alleged pain and functional limitations, could not be found credible in light of the inconsistency between his reported limitations and the limitations asserted by his treating physician Dr. Caron. (R. 13.) Furthermore, the ALJ doubted the claimant's testimony because he believed Cichon occasionally engaged in "at least medium level work" as a landscaper. (*Id.*) The merits of these two arguments proffered by the ALJ against Cichon's credibility shall be addressed individually as they each raise different issues.

In support of his finding that Cichon and Dr. Caron reported inconsistent physical limitations, the ALJ cited several of Dr. Caron's statements that he believed proved Cichon was not precluded from handling light work. First, he noted that Dr. Caron reported the claimant should be considered "almost totally disabled from heavy labor." (*Id.*) (emphasis added). Second, he underscored Dr. Caron's statement that Cichon had the ability to stand for two hours performing "light duty" lifting with "rare medium weight (40 to 60 lbs.)…for 10 to 20 seconds at a time" and was capable of minimal bending and squatting but had no ability to perform overhead lifting during his two hours of work capacity. (*Id.*) Third, the ALJ highlighted Dr. Caron's report that the claimant could return to full time employment at "medium exertional level" with surgical intervention. (*Id.*) According to the ALJ, these statements were consistent with the remaining material in Dr. Caron's medical report and indicated Cichon was not restricted from light level work. (R. 14.)

However, the ALJ's summary acceptance of Dr. Caron's assessment of Cichon's ability to perform light duty and his potential to return to "medium" work with surgical intervention was improper. Though the SSA may consider opinions from medical sources, the final responsibility for determining limitations and disability status by statutory definition is reserved to the Commissioner,

or in this case, the ALJ. 20 C.F.R. § 404.1527(e)(1)-(2) (stating that a medical source's conclusion that a claimant is "disabled" cannot be accepted as a legal determination on its face). Thus, Dr. Caron's use of the terms "light," "medium," and "heavy" work in his report cannot be legally determinative of Cichon's actual RFC and such terms cannot be used to support a determination about a claimant's RFC unless the record also contains objective evidence of those exertional and non-exertional abilities.

In this case, the ALJ cited objective evidence that he believed was consistent with Dr. Caron's disability determinations, but he failed to examine the evidence thoroughly. For example, the ALJ selectively relied on Dr. Caron's report that Cichon could lift forty to sixty pounds standing and that he could do minimal amounts of bending and squatting to show that Cichon could meet the exertional or non-exertional demands of "light" work, which only require carrying or lifting a maximum of twenty pounds occasionally and state no specific need for squatting or bending at all. (R. 14.) At the same time, however, the ALJ did not address how Dr. Caron's other objective findings, such as Cichon's two-hour standing limitation and his two-hour work tolerance, coupled with his need to recline for one to three hours, supported his assessment that Cichon was capable of light work. These unaddressed statements of Dr. Caron's are significant because "light" work can require "a good deal of walking or standing" and one must be able to "substantially" do "all of these activities to be considered capable of performing a full range of light work." 20 C.F.R. § 404.1567(b). Because the issue of whether a condition such as the need to recline for one to three hours is prohibitive of light work is not easily determined, the ALJ should have explored these physical conditions further, most obviously by submitting them to the testifying VE. Thus, the ALJ

was not justified in relying on Dr. Caron's use of the RFC terms to support his conclusions that Cichon was capable of light work and that Cichon's testimony was not credible.

In addition, the ALJ failed to sufficiently articulate the basis for his conclusion that Cichon's reported limitations were inconsistent with Dr. Caron's findings, thus leading him to doubt Cichon's credibility. The Seventh Circuit has ruled that an ALJ must build a "logical bridge" from the evidence to his conclusion so that a reviewing court may assess the validity of his findings. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). For example, Cichon reported that he could not stand for more than five to ten minutes with a maximum lifting weight of twenty pounds, which contradicted Dr. Caron's report that Cichon could stand two hours with a maximum weight of forty to sixty pounds. It is not clear whether the ALJ discredited all of Cichon's testimony of pain because of this exaggeration or he discredited Cichon's testimony only to the degree that Cichon claimed he was restricted while finding that Cichon's other allegations were credible. The ALJ's decision, however, only stated that there were inconsistencies in the reported limitations by Dr. Caron and Cichon.

Furthermore, the VE testified that Cichon would qualify as disabled assuming *all* Cichon's testimony was true, including his claims of continual back pain, his numbness and weakness of the legs, his constant demand for pain medication throughout the day, his sitting tolerance of 10-15 minutes, his standing tolerance of five to ten minutes and his inability to climb or stoop. (R. 187.) However, the VE did not specify whether certain alleged conditions were more important than others in a disability determination. It is possible that certain factors were not significant and thus Cichon could have been found disabled in the absence of those factors, based on other evidence in the record. If the ALJ had posed a hypothetical question to the VE that considered Cichon's consistent

testimony while substituting his inconsistent testimony with the medically supported claims, the VE's conclusion would have been more useful to the ALJ's analysis. The SSR 96-7P states that not only is it possible for the adjudicator to find the claimant's testimony credible in partial degrees while still finding a disability, but it is his or her obligation to make clear to the individual and subsequent reviewers the weight he or she lent to the claimant's statements and the reasons for it. SSR 96-7P, 1996 WL 374286, at *2. Thus, the ALJ's conclusion that Cichon's entire testimony was not credible should have been based on a more cogent and transparent rationale.

Finally, the ALJ's conclusions that Cichon's part-time landscaping work demonstrated that he could perform "at least light work" is questionable for two reasons. First, the basic facts of Cichon's landscaping work were unclear. The record does not indicate the number of days worked and the amount of hours Cichon engaged in part-time landscaping per week versus per day. When the ALJ asked Cichon how many hours he landscaped *per week*, Cichon answered "*per day* six or seven hours." (R. 171.) The ALJ never demanded clarification on whether this was a misstatement before he submitted this factor to the VE, who ultimately categorized such work as medium level work. (*Id.*) When the ALJ was setting forth inconsistencies in the claimant's testimony and the medical record, he should have ensured that the facts were well settled to extract reasonable conclusions from them.

Second, even if Cichon did work six or seven hours per day doing landscaping work, which included mower riding, cleaning windows and trimming hedges, the ALJ failed to explore fully the conditions under which Cichon performed the work. (*Id.*) According to the federal regulations, several factors can be used to analyze the nature of a claimant's work activity. For example, work done under "special conditions" that take into account an impairment can indicate a claimant's work

-17-

is not SGA if it is work with irregular hours, frequent rest periods, impairment-accommodating equipment, a low demand for work quality, a past association with that employer as the basis of employment, or the employer's hired the claimant out of concern for his or her welfare. 20 C.F.R. § 404.1573. Consistent with some of these factors regarding "special" work conditions, Cichon mentioned in his testimony that he had a prior six-year work history with his landscaping employer who was aware of his physical condition and, in turn, emphasized to him "don't push it." (R. 172.) Such statements indicated that Cichon's landscaping activity was not necessarily inconsistent with Dr. Caron's reported two-hour work tolerance for Cichon nor his need for a one to three hour reclining period if his employer generously accommodated his six or seven-hour work schedule around his unique physical limitations. Moreover, such activity was not necessarily inconsistent with restrictions described in any of Cichon's prior medical reports. The VE was never asked whether Cichon's work would still qualify as medium level if his employer allowed him special work conditions. The ALJ should not have summarily assumed that landscaping work was a medium level activity proving Cichon could do "at least light work" without exploring the matter further.

### 2.    ALJ's Disregard of Favorable Evidence

Cichon's second major argument is that the ALJ ignored evidence that would have been favorable to his disability claim. The ALJ's decision must be based on all relevant evidence in the record. *Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000). The Seventh Circuit has frequently ruled that while the ALJ is not required to rule on every piece of evidence, he or she may not select evidence which favors his or her conclusions without articulating reasons for accepting or rejecting "entire lines of evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985).

In the present case, this Court agrees with Cichon that the ALJ's findings and the hypotheticals he posed to the VE indicated a selective disregard of favorable evidence from Cichon's most recent report by his treating physician, Dr. Caron. An ALJ must consider all available medical evidence and articulate specific reasons for accepting or rejecting it and then should discuss those findings in the context of the relevant regulations. *Scott v. Barnhart*, No. 00 C 5645, 2002 WL 1608218, at *5 (7th Cir. July 22, 2002). First, without explanation, the ALJ excluded from his findings Dr. Caron's statements that Cichon had a two-hour work tolerance coupled with a need to recline for one to three hours. The government argues that the ALJ specifically dismissed this statement because Cichon's six to seven hour workdays in landscaping conflicted with Dr. Caron's two-hour work tolerance, but the ALJ never in fact articulated his reasons. Second, the ALJ failed to submit the reported limitations from Dr. Caron to the VE, in particular the two-hour work tolerance and Cichon's need to recline, when these conditions were clearly favorable to Cichon's claim of disability. Instead, and again without explanation, the ALJ submitted a hypothetical to the VE specifically based on the conditions from the DDS report which were far less favorable to Cichon's claim.

Furthermore, though the ALJ discussed and clearly relied on evidence from both Dr. Caron's report and the DDS report, he did not articulate whether one source was more heavily weighted in his overall decision, although it appears that the ALJ gave more weight to the DDS report. Most notably, he had the VE determine Cichon was not disabled based on the DDS's reported diagnosis of Cichon's limitations, while relying heavily on Dr. Caron's report only to acknowledge the statements supporting the conclusion that Cichon was still capable of "light" work. Thus, the ALJ first ignored favorable evidence without explanation and second failed to explain why he lent more

controlling weight to the findings of the DDS, a non-treating physician's report. The federal regulations stipulate that generally more weight is given to opinions from "treating sources," such as Dr. Caron, since they are likely to be most able to provide a detailed and thorough history of a claimant's medical impairment which cannot be as easily learned by individual examinations. 20 C.F.R. § 404.1527(d)(2).

Moreover, when the treating source's opinion is (1) well-supported by clinical techniques and (2) consistent with other substantial evidence in the case record, it will be given controlling weight. *Id.* Most significantly, the ALJ is required to give good reasons in his decision for the weight he gives the treating source's opinion. *Id.* In this case, it is not at all clear why the ALJ disregarded the majority of Dr. Caron's report. First, the ALJ had confidence in Dr. Caron's findings regarding Cichon's abilities for light work, but no confidence in Dr. Caron's report of Cichon's two-hour work limitation. Yet the clinical support for all of Dr. Caron's findings was the same. Second, Dr. Caron's report is not necessarily inconsistent with earlier medical reports in the record, because his report was the most recent and could reasonably have reflected a worsening of Cichon's physical condition over time. Finally, even if the ALJ reasonably believed Dr. Caron's report was not well supported by clinical techniques or was inconsistent with other substantial evidence, he had the duty to articulate these reasons, which he did not do. Thus, the ALJ failed to support by substantial evidence both his decisions to weigh the DDS report more heavily than Dr. Caron's evidence and to ignore evidence supporting Cichon's disability claim.

## CONCLUSION

For the reasons expressed above, both parties' motions for summary judgment are DENIED, and the ruling of the ALJ is VACATED. This matter is remanded to the ALJ for further proceedings consistent with this opinion.

ENTER:

Nan R. Nolan
United States Magistrate Judge

Dated: 8/30/02